(Decided 28th June, 1869.)

---

Mary E. Branson *vs.* William B. Hill, Administrator of Charles E. Branson, and others.

*Construction of a Will—Vested interest.*

A testatrix gave the rents, issues and profits of her whole estate to her sister during her life, and then bequeathed as follows: "And it is my will and desire, that after the death of my said sister, I give and bequeath to C. E. B and M. E. B, children of my nephew J. B, *or the survivor of them,* the one moiety or half part of my whole estate *to them and their heirs forever. Item.* And it is my will, that after the death of my sister aforesaid, I give and bequeath the other moiety or half part of my estate to D. A. M and W. H. M, children of my niece S. M, or the survivor of them, their heirs and assigns forever. *Item.* It is further my will and desire, that if all the above-named legatees should die before they arrive at age, and without lawful issue, then, and in that case I give and bequeath the property aforesaid to the surviving children of my nephew J. B, and my niece S. M, to them and their

heirs forever, share and share alike. And I do further order and direct that after the death of my said sister, that the rents, issues and profits of my estate be deposited in the Savings Institution at interest, and there to remain until the youngest of the first named legatees should arrive at full age, when a dividend will be made and the property given up to them." At the death of the testatrix, the legatee for life, and those in remainder were all living. The legatee for life received the income of the estate (consisting of leasehold property) during her life. C. E. B, one of the legatees in remainder, attained the age of 28 years, and died in 1855, leaving a widow and one child. The life tenant died in 1856. On a bill subsequently filed by M. E. B for a sale of the estate for the purposes of a partition, and for a construction of said will, HELD:

That C. E. B took a vested estate in remainder under the will, and his administrator was entitled to one-fourth of the income received prior to the sale, and of the net proceeds of sale of the leasehold estate.

APPEAL from the Circuit Court of Baltimore City.

The object of the bill in this cause, filed by the appellant, was to obtain a construction of the last will and testament of Mary Smith. The terms of the will are set forth in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, GRASON and ROBINSON, J.

*L. L. Conrad* and *Bernard Carter,* for the appellant.

The only question is, where did the estate in remainder vest? To what period must the "survivorship" be referred? If to the testatrix's death, then William B. Hill, the administrator of Charles E. Branson, deceased, will succeed, by representation, to the one-fourth in remainder. But if, on the contrary, the "survivorship" shall be referred to the death of the life-tenant, Margaret Branson, he will be excluded, and the complainant takes the entire moiety designated to herself and Charles Moxy, "or the survivors of them."

The solution of the question depends upon the construction to be attached to the words " or survivors of them." The rule of interpretation, as now prevailing, is irrevocably established, and by a long line of precedents. It may be stated thus : " Where a legacy is given to two or more, *or to the survivors of them,* and there be no special intent to be found in the will, the survivorship is to be referred to the period of division ;" and, " if a previous life estate be given, then the period of division is the death of the life tenant, and the survivors at such death will take the whole of the legacy." 2 *Jarman on Wills,* 612 (*Am. Ed.,* 648–650.)

Mr. Jarman, after an exhaustive review and discussion, announces the prevailing rule unequivocally as follows : " In this state of the recent authorities, one scarcely need hesitate to affirm that the rule which reads gifts to 'survivors,' simply as applying to objects *living at the testator's death,* is confined to those cases in which there is *no other period to which survivorship can be referred ;* and that where such gift is preceded by a *life,* or other prior interest, it takes effect in favor of those who survived the period of distribution, and *those only.*" 2 *Jarman on Wills* (*Am. Ed.,* 631 *et seq.*), *and the numerous cases there cited ; Neathway vs. Reed,* 17 *Eng. L. & Eq.,* 150 ; *Pope vs. Whitcombe,* 3 *Russell,* 124 ; *Buckle vs. Fawcett,* 4 *Hare,* 536 ; *Turing vs. Turing,* 15 *Simons,* 139 ; *Dorville vs. Wolff,* 15 *Simons,* 510 ; *Watson vs. England,* 15 *Simons,* 1 ; *Spurrell vs. Spurrell,* 21 *Eng. L. & Eq.,* 522 ; *Young vs. Robertson, reported in* 4 *McQueen's Appeal Cases,* 314, 337, *and in* 8 *Jurist,* 825 ; *Naylor vs. Robson,* 34 *Beav.,* 571 ; *Drakeford vs. Drakeford,* 33 *Beav.,* 43 ; *Knight vs. Poole,* 32 *Beav.,* 548 ; *Thompson vs. Thompson,* 29 *Beav.* 654 ; *Neighbour vs. Thurlow,* 28 *Beav.,* 33 ; *Heskett vs. Megenniss,* 27 *Beav.,* 395 ; *Hill vs. Rockingham Bank,* 45 *N. H.,* 270 ; *Westbrooke vs. Romeyn,* 1 *Baldwin,* 196 ; *Olney vs. Hull,* 21 *Pick.,* 311 ; *Moore vs. Lyons,* 25 *Wend.,* 120.

The third clause in the will shows that "surviving," as there used, could not refer to the death of the testatrix; therefore it will not be construed as referring to her death in the first clause. 2 *Jarman on Wills*, 645, 646; *Daniel. vs. Daniel*, 6 *Vesey*, 297; *Prebble vs. Boghurst, Wilson's Ch. Rep.*, 165; *Wordsworth vs. Wood*, 4 *Mylne & Craig*, 641; *Haws vs. Haws*, 3 *Atkyn's Ch. Rep.*, 524.

*Wm. B. Hill* and *Wm. Daniel*, for the appellees.

The intention of the testatrix to vest the estate at once in the devisees in remainder—subject to the life tenancy —speaks strongly out of every part of her will.

To suppose that the testatrix intended, in any event, that her nephews and nieces, whom she specified by name, were not to take in equal shares, is opposed to the whole tenor of the will and to the relationship subsisting between the parties. *Snively vs. Bevans, et al.*, 1 *Md.*, 222; *O'Byrne vs. O'Byrne's Admr.*, 9 *Md.*, 512; *Lark vs. Linstead, et al.*, 2 *Md.*, 420; *Spence vs. Robins*, 6 *G. & J.*, 507; *Thomas' Lessee vs. Wootten*, 4 *H. & McH.*, 428.

The law of Maryland is opposed to the creation of joint tenancies, and the same cannot be done unless expressly so declared in words. *Code of Pub. Gen'l Laws*, Art. 49, sec. 12; *Moody vs. Elliott*, 1 *Md. Ch. Dec.*, 290.

A devise to children or others as a class, or *nominatim*, and survivors after the determination of a particular estate, has been held to create a vested estate, by the almost unbroken current of American authorities, and also by the same unbroken current of English authorities for a period of over two hundred and thirty years, and down to 1818, and, with few exceptions, from that period down to the present time.

And even in the few cases which appear to form an exception to the rule, if the remainder be limited by the will to individuals by name, as in the case now under consideration, the authorities agree, both English and American,

in referring the time of vesting the estate to the death of the testator. *Ross vs. Drake*, 37 *Penn. State R.*, 373; *Moore vs. Lyons*, 25 *Wendell*, 119; *Doe dem. of Long vs. Prigg*, 8 *Barn. & Cress.*, 231, which overrules *Cripps vs. Wolcott*, 4 *Mad.*, 11; *King vs. King*, 1 *Watts & Sergt.*, 205; 4 *Kent's Com.*, 203 *marg.*, top 214, and note of 7th edition; *Fulton vs. Fulton*, 2 *Grant's Cases*, 28; *Young vs. Stoner*, 37 *Penn.*, 105; *Chew's Appeal*, 37 *Penn.*, 23; *Blanchard vs. Blanchard*, 1 *Allen*, 223; *Thrasher vs. Ingraham and wife*, 32 *Alabama*, 645; *Peters vs. The Pub. Admr's.*, 2 *Bradford*, (*N. Y.*) 201; 2 *Jarman on Wills*, 654 (*margin*); *Hocker vs. Gentry*, 3 *Metc.*, (*Ky.*,) 463; *Minnig vs. Batdorff*, 5 *Penn.*, 503; *Buckley's Admr's. vs. Reed*, 15 *Penn.*, 85; *Seay vs. Young*, 2 *Head*, 417; *Williams vs. Fields*, 2 *Sandford's Ch. R.*, 533.

ROBINSON, J., delivered the opinion of the Court.

The question to be decided in this case arises upon the construction of the following clauses in the will of the late Mary Smith:

"Item. I give and bequeath unto my beloved sister, Margaret Branson, for and during her natural life, the rents, issues, and profits of my whole estate, real, personal, and mixed, consisting of several houses, lots, and personal effects; and it is my will and desire, that after the death of my said sister, I give and bequeath to Charles Emmory Branson and Mary E. Branson, children of my nephew, Joseph Branson, or the survivors of them, the one moiety, or half part of my whole estate, to them and their heirs forever.

"Item. And it is my will, that after the death of my sister aforesaid, I give and bequeath the other moiety, or half part of my estate, to David Allen Mantz and William Henry Mantz, children of my niece Sophia Mantz, or the survivors of them, their heirs, and assigns forever.

"Item. It is further my will and desire, that if all the

above-named legatees should die before they arrive at age, and without lawful issue, then, and in that case, I give and bequeath the property aforesaid to the surviving children of my nephew, Joseph Branson, and my niece, Sophia Mantz, to them and their heirs forever, share and share alike.

· · "And I do further order and direct, after the death of my said sister, that the rents, issues, and profits of my estate be deposited in the Savings Institution, at interest, and there remain until the youngest of the first-named legatees should arrive at full age, when a dividend will be made, and the property given up to them."

The testatrix died in 1843, leaving Margaret Branson the life tenant, and the parties in remainder living at the time of her death.

Charles E. Branson, the first-named legatee in remainder, died in 1855, and before the termination of the life estate of Margaret Branson, leaving a widow and child, and his sister, Mary E. Branson, the co-legatee in remainder, surviving him.

What estate did Charles E. Branson take under this will is the sole question presented by this appeal? Did it *vest in interest* upon the death of the testatrix, and, being personal estate, pass as such to his personal representatives; or was it *contingent* upon his surviving the life tenant, Margaret Branson?

If the former, the decree must be affirmed; if the latter, having died before the termination of the life estate, his sister, Mary E. Branson, the surviving co-legatee in remainder, would take the entire moiety, to the exclusion of the appellees.

· Whilst it is insisted on the one hand, that the words "*or the survivor of them*" refer to the termination of the life estate, and that the legatees only, who may be living at that time, can take, it is urged with equal confidence on the other, that they refer to the *death of the testatrix*,

and that the provisions and language of the will plainly indicate that it was the intention they should take *in interest at that time.*

Few questions in regard to the construction of wills have given rise to greater difficulty than the proper meaning of the words of survivorship, as used in the will before us, and the decisions are conflicting and irreconcilable with each other.

Where the gift is to take effect in possession immediately upon the death of the testator, it is plain that the words of survivorship must refer to that time, there being no other period in the devise to which they could relate.

But where the gift is not immediate (*i. e., in possession*), there being a prior life, or other particular interest carried out, so that there is another period to which the words could refer, the question becomes one of greater difficulty. 2 *Jarman on Wills.*

An examination of the earlier English cases will show that the Courts uniformly held that words of survivorship in wills of both real and personal estate, referred to the death of the testator. Some of the cases went upon the particular phraseology and context of the will—-others upon the probable intention of the testator, making allowances for the deficiency and inaccuracy of expression so commonly to be found in testamentary instruments, and the policy of the law which favors the vesting of estates —and others again upon the presumption that the testator did not intend to cut off from the provisions of his will, the children and descendants of such of the primary legatees or devisees as might happen to die before the termination of the intermediate estate. 1 *Eq. Ca. Ab.*, 293 ; *Rose vs. Hill*, 3 *Burr.*, 1881; 3 *B. C. P.*, 195 ; *Goodtitle vs. Whitby*, 1 *Burr.*, 228; *Marryat vs. Townly*, 1 *Ves.*, 102; *Habergham vs. Vincent*, 2 *Vesey, Jr.*, 204 ; *Perry v. Woods*, 3 *Vesey*, 204 ; *Brown vs. Bigg*, 7 *Ves.*, 279 ; *Doe ex dem vs. Prig*, 8 *B. & C.*, 231 ; *Maberly vs. Strode*, 3 *Ves.*, 450.

But strong as may be the array of authorities in favor of this construction, and extending as they do for a period of more than two hundred years, it must be admitted that in the later English decisions, especially where there is a gift of personal estate to a person for life, and after the termination of such interest to certain persons *nominatim*, or to a class, there is a strong inclination to refer the words of survivorship to the period of distribution, or to the termination of the intermediate estate. That is to say, the legatees surviving at that time, take to the exclusion of the personal representatives of such as may have died before that period. And to this modern rule of construction such eminent elementary writers as Mr. Jarman and Mr. Redfield give their unqualified approval. *Brograve vs. Winder*, 2 *Vesey, Jr.*, 634; *Newton vs. Ayscough*, 19 *Vesey*, 534; *Cripps vs. Wolcott*, 4 *Mad.*, 11; *Neathway vs. Reed*, 17 *E. C. L. & Eq.*, 151; *Pope vs. Whitcomb*, 3 *Russ.*, 124; *Goddard vs. Lothbridge*, 16 *Beav.*, 529; *Twining vs. Twining*, 15 *Sim.*, 139–510; *and Smith vs. Osborne, and others*, 6 *House of Lords' Cases*, 393.

In this country, however, the weight of authority seems to be in favor of the earlier rule, which refers the words of survivorship to the death of the testator, and this too without recognizing any distinction between real and personal estate. *Moore vs. Lyons*, 25 *Wend.*, 119; *Ross vs. Drake*, 37 *Penna.*, 373; *Hansford vs. Elliott*, 9 *Leigh*, 79; *Blanchard vs. Blanchard*, 1 *Allen*, 223.

So far, however, as regards the construction of the will before us, it is unnecessary to decide which of these two rules is the better sustained by authority and reason, because all the cases concur in saying that the intention must be carried out if it can be fairly ascertained from the language and provisions of the will.

It is then to the instrument itself to which we must at last resort in order to ascertain its true meaning, and if this can be done, reference to rules often arbitrary and

decisions sometimes irreconcilable, will be altogether unnecessary.

With this universally acknowledged principle as our guide, there can be but little difficulty in the construction of the will before us.

In the first clause the testatrix bequeaths to Margaret Branson, her sister, for life the *usufruct* of the estate, and after her death, to Charles E. and Mary E. Branson, children of her nephew, Joseph Branson, "*or the survivors of them,*" the one moiety or half part of her whole estate, "*to them and their heirs forever.*"

Now with these words of perpetuity qualifying the terms, "*or survivor of them,*" can it be said that she intended in the event of one of the primary legatees dying before the termination of the life estate, but leaving children, that the surviving legatee should take the entire moiety of the estate? The bequest is not to Charles E. and Mary E., or the survivor and his heirs, but to "*them and their heirs forever.*"

In *Moore vs. Lyons*, 25 *Wend.*, 119, the devise was of real estate to one for life, and after her death to her three daughters, Susan, Jane, and Betsy, or "*to the survivors or survivor of them, their or her heirs and assigns forever.*" Almost the identical words used in this will, and although the Court approved of the rule which referred the words of survivorship to the death of the testator, yet it was held that apart from any arbitrary rule of construction, the terms of the will plainly indicated that the testator intended that the children of either of the three daughters who might die during the continuance of the intermediate estate, should take an equal share with the surviving sisters.

And in *Hansford vs. Elliott*, 9 *Leigh*, 79, where there was a bequest of personal property to the wife for life; and "at her death, for the whole personal estate to be divided equally amongst my surviving children, by name,"

Judge PARKER, in delivering the opinion of the Court said, "The bequest is to children specifically named; I cannot believe the testator meant to make a *tontine* among them, and if all but one died before the mother, for that one to take all in exclusion of grandchildren or their descendants."

If, however, it be conceded that the language and provisions in the first clause of the will do not plainly indicate that the testatrix designed the legatees should take an interest transmissible to their heirs or personal representatives, irrespective of their surviving the life tenant, we think all doubt is removed, when it is read in connection with the third clause, in which the entire estate is limited over, upon the dying of all of the above-named legatees "before they *arrive at* age *and without issue.*"

Now suppose all of them had died, leaving children, before the termination of the life estate of Margaret Branson, if the construction insisted upon by the appellant be correct, it would follow that the children could not take, because the estate had never vested in their parents, nor could those entitled in remainder, upon the legatees dying without issue, because the contingency never happened.

We should thus have a case of *intestacy,* where it is plain no *intestacy* was ever intended, and the third clause in the will with its limitation over would likewise be entirely defeated. Could a construction be more repugnant to the intention of the testator, which speaks to us from the four corners of this will?

We are of opinion, therefore, that Charles E. Branson took an estate in interest upon the death of the testatrix, and being personal property, it passed upon his death to his personal representatives.

This construction gratifies the intention of the testator, and gives effect to each and every provision of the will.

It accords with the settled rule of construction in favor

of the *early vesting* of legacies, and is consistent with the policy of the law which opposes *joint tenancy*, with its distinctive feature of *jus accrescendi*, or right of survivorship.

Taking this view of the case upon its merits, we have deemed it unnecessary to express any opinion as to whether the question presented in this appeal was concluded by the decree of February the 7th, 1867. And we are not to be understood as overruling, or as questioning, in any respect, the correctness of the decision in *Vickers and wife vs. Tracey*, 22 *Md.*, 196.

For these reasons, the decree will be affirmed.

*Decree affirmed.*

(Decided 28th June, 1869.)