FLORENCE V. BURDEN, Widow, et al.

*vs.*

EVELYN BYRD BURDEN et al.

*Wills: construction of—; words of survivorship; to what period referred; intention.*

A testator by his will, after several other bequests, bequeathed the rest and residue of his estate, one-third to his daughter, Judith Carter Cutting, and after her death to her child or children surviving, and in default of any child or children surviving, then to his daughter, Evelyn Byrd Burden, and his son, William A. Moale, Jr., should they survive, and if not then to their child or children; he then bequeathed to his daughter, Evelyn Byrd Burden, a third of said residue of his estate for and during her life, and after her death to her child or children surviving, and in default of any such child or children surviving, to his daughter, Judith Carter Cutting, and his son, William A. Moale, Jr., should they survive, if not then to their child or children; a further bequest of the other one-third (but not affecting the question raised in this case) was made to his son, William A. Moale, Jr.; it was: *Held,* that by this will the testator intended that the child or children of his daughter, Evelyn Byrd Burden, who were to take at her death, were those of her children that should survive *her;* and that under such a devise, children of a child of hers who had died before her death were to be excluded. p. 555

In general, words of survivorship are to be referred to the event plainly intended to accomplish the purpose of the testator, whether that event be before, at the time of, or at the death of the testator.                                                    p. 555

Where the gift to "the survivors" is preceded by a particular estate for life or years, the words of survivorship, in the absence of any contrary intention, usually refer to the termination of the particular estate, such as the death of the life tenant.
                                                                p. 557

*Decided April 13th, 1917.*

Appeal from the Circuit Court of Baltimore City.  (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Richard M. Duvall* (with a brief by *Duvall & Baldwin*), for the appellants.

*Charles B. Bosley,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

We are called upon by this appeal to construe the residuary clause of the last will and testament of William A. Moale, deceased.

The testator by his will executed on the 21st day of Novem-. ber, 1877, first devised to his daughter Judith Carter Cutting, a lot of ground on the west side of Charles street in the City of Baltimore "for and during her life, and at her death to her child or children, and in default of child or children

surviving, to my daughter Evelyn Byrd Burden, and my
son William A. Moale, Junior, should they survive, and if
not, then to their child or children." He then devised to his
daughter Evelyn Byrd Burden a lot of ground also on the
west side of Charles street, "for and during her life; at her
death to her child or children surviving, and in default of
child or children surviving, then to my daughter Judith Car-
ter Cutting, and my son William A. Moale, Junior, should
they survive, and if not, then to their child or children." He
next devised to his son William A. Moale, Junior, a lot of
ground situated on the west side of Washington Place, sub-
ject to the life estate of his wife and to an annuity therein
named.

The testator then, after bequeathing certain personal prop-
erty to his said son and daughters, proceeded to dispose of
the remainder of his property as follows:

> "*The rest and residue of my estate, real, personal
> and mixed, no matter how constituted, I bequeath one-
> third part of same to my beloved daughter, Judith
> Carter Cutting, during her life, and at her death to
> her child or children surviving, and in default of child
> or children surviving, then to my daughter, Evelyn
> Byrd Burden, and my son, William A. Moale, Junior,
> should they survive, and if not, then to their child or
> children. I bequeath to my beloved daughter, Evelyn
> Byrd Burden, one-third part of the said estate for and
> during her life. and at her death to her child or chil-
> dren surviving, and in default of child or children
> surviving then to my daughter, Judith Carter Cut-
> ting, and my son, William A. Moale, Junior, should
> they survive, and if not, then to their child or chil-
> dren. I bequeath to my son, William A. Moale, Ju-
> nior, the residuary third part of the said estate for and
> during his life, and at his death to his child or chil-
> and in default of child or children surviving, then to
> my daughters, Judith Carter Cutting and Evelyn
> Byrd Burden, should they survive him, and if not to
> their child or children.*"

The testator executed a codicil to his said will in which he stated that he had since the execution of his will, given to his son William A. Moale, the sum of $30,000, which he directed should be deducted from his one-third share of his estate and concluded the codicil by saying "the furniture, silver, wines, etc., bequeathed to William A. Moale during his life, and his third share of my estate, agreeably to the aforegoing will, I give him absolutely and without entail."

It is only the residuary clause of the will herein italicized that we are asked to construe.

The testator died in the City of Baltimore on August 14th, 1880, and his said will and codicil were admitted to probate by the Orphans' Court of said city on October 21st, thereafter.

His three children, William A. Moale, Junior, Judith Carter Cutting and Evelyn Byrd Burden, were not only living at the time of the execution of the will and codicil, but were also living at the death of the testator.

Judith Carter Cutting, the daughter, who survived her husband, died in April or May, 1915, leaving one son, James DeWolf Cutting, surviving her.

Dr. William A. Moale, Junior, who survived his wife died in June, 1905, leaving surviving him a daughter, Eleanor A., wife of T. O'Donell Hillen.

Evelyn Byrd Burden died on April 29, 1916, survived by one son, I. Townsend Burden, Jr., born in 1875, and two daughters, Evelyn Byrd Burden and Mary Gwendolyn Dows, born in 1873 and 1879, respectively; and two grandchildren, William A. M. Burden, Jr., and Shirley Carter Burden, children of a deceased son, William A. Moale Burden, who was born in 1878. William A. Moale Burden died in 1911 or 1912 leaving a widow, Florence V. Burden, who with her said two children, William A. M. and Shirley Carter Burden, were the plaintiffs in the Court below and are the appellants here.

The sole question presented by this appeal is, what interest or estate, if any, was taken by the widow and two children of William A. Moale Burden in the property devised for life to Evelyn Byrd Burden, the grandmother of said children.

In determining this question it must be ascertained whether the word "surviving" refers to the death of the testator or to the death of the life tenant. If it refers to the death of the testator, then William A. Moale Burden, son of the life tenant, Evelyn Byrd Burden, who was then living, took at such time a vested interest or estate in the property devised to his mother for life, which upon his death passed to his said children, William A. Burden, Jr., and Shirley Carter Burden, subject to the dower rights, if any, of their mother, Florence V. Burden; but if the word "surviving" refers to the death of the life tenant, Evelyn Byrd Burden, then at her death the property devised to her for life passed under the will to her three children surviving her, Evelyn Byrd Burden, I. Townsend Burden and Mary Gwendolyn Dowe, to the exclusion of the said children of her son William A. M. Burden who predeceased her.

As was said by this Court in *Branson* v. *Hill, Administrator,* 31 Md. 187: "Few questions in regard to the construction of the will have given rise to greater difficulty than the proper meaning of the words of survivorship, as used in the will before us, and the decisions are conflicting and irreconcilable with each other.

"Where the gift is to take effect immediately upon the death of the testator, it is plain that the words of survivorship must refer to that time, there being no other period in the devise to which they could relate.

"But where the gift is not immediate (*i. e.,* in possession), there being a prior life, or other particular interest carried out, so that there is another period to which the words could refer, the question becomes one of greater difficulty."

It is said in 40 *Cyc.* 1511, that "words of survivorship will be referred to the event plainly intended to accomplish the purpose of the testator, whether that event be before, at the time of, or after the death of the testator. As a general rule words of survivorship in a will, particularly when used in connection with an immediate gift, refer to the death of the testator as the time at which the survivorship will be determined, unless it clearly appears from the context and surrounding circumstances that the testator intended to refer it to another time, after his death. But where the gift to the survivors is preceded by a particular estate for life or years, words of survivorship, in the absence of anything indicating a contrary intention, usually refer to the termination of the particular estate, such as at the death of the life tenant."

In *Dary* v. *Grau,* 190 Mass. 486, it is said that where a gift to children for life, with a gift over to the surviving sons and daughters of the testatrix if the life tenant dies without issue, the surviving sons and daughters are the sons and daughters who survive the life tenant who dies without issue, unless the usual meaning of these words is overcome by the context of the will. *Mullarky* v. *Sullivan,* 136 N. Y. 227.

In *Wilson* v. *Bull,* 97 Md. 128, the testator, the owner of a number of ground rents devised the same to his wife for life and directed that after her death each one of his six children should, respectively, during their natural lives, enjoy one equal undivided sixth part of said rents. Upon the death of any one of the six children leaving issue, his or her sixth part was to become the absolute property of his or her children or descendants, taking *per stirpes.* The will further provided that in the event of the death of any of testator's children without leaving a descendant then living, "then the part or share of the said son or daughter so dying shall go to and become the property of my surviving child or children." Testator left surviving him a widow and five daughters and one son. His widow died three years after the testator and the latter's six children were then all living. Before 1901

all the children had died except the son and one daughter. In that year the son died without leaving issue. The Court held, that under the will the interest of the son in the ground rents passed to his sister, the then only surviving child of the testator, as her absolute property to the exclusion of the children of her deceased sisters.

The appellants urged that the survivorship of the children of the testator had reference to the time of the death of the widow or of the testator himself, and not to the death of the life tenant.

JUDGE FOWLER, speaking for the Court in that case, said: "We may say here in regard to this construction suggested by the appellants, as we have said in relation to others, that there is nothing, so far as we have been able to ascertain from an examination of the will itself, or of the circumstances surrounding the testator, which would induce us to hold that his intention was other than that which appears upon the face of the will. If he had intended that those he named as "the survivor or survivors of his children" should be ascertained and fixed at any particular time is it not almost certain he would have so provided? He failed, however, to make any express provision to this effect. He could have said that the share of a child dying without issue shall go to my children who are surviving at my death, or at the death of my widow. But not having made any such provision we may conclude he intended that *whenever* one of his children should die leaving no child or children surviving, *then* his remaining children or his surviving children should take the share of the child so dying."

It is disclosed with sufficient clearness that the testator in the will before us intended that the child or children of his daughter Evelyn Byrd Burden, that were to take at her death, the property devised to her for life, were those that survived her.

The will provides that at the death of the daughter, the life tenant, the property devised to her for life should pass

"to her child or children surviving." Then follows the provision, "and in default of child or children surviving then to my daughter Judith Carter Cutting, and my son William A. Moale, Jr., should they survive, and if not, then to their child or children."

There can be no doubt as to the intention and meaning of the testator in the use of the language employed. The children of the life tenant that were to take the property at her death were those who survived *her*. There is certainly nothing in the will indicating a contrary intention on the part of the testator.

The codicil which effects only the devises and bequests to the son does in no way indicate a change of intention as to the provisions found in the residuary clause of the will in respect to the daughters.

It follows from what we have said that upon the death of Evelyn Byrd Burden, the life tenant, the property devised to her in the residuary clause of the will under consideration passed to her three children, Evelyn Byrd Burden, I. Townsend Burden, Jr., and Mary Gwendolyn Dowe who survived her, to the exclusion of the widow and children of William A. M. Burden; and as this was the view taken by the Court below in the passage of the decree appealed from, the decree will be affirmed.

> *Decree affirmed, the costs to be paid out of the estate.*